Hyman, C. J.,
dissenting. The law does not declare a different rule for suspension of prescription on notes payable to order, than it does on other obligations; and the maxim, Contra non valeniem agere non currit prmscripiio, is as applicable to them as to any other debts.
It cannot be rationally inferred that the maxim does not apply to notes payable to order, because they are prescriptible against minors and interdicted persons as well as against others.
Where written laws, nor reason, make a distinction, courts should not.
Petition for a Rehearing, by Race, Foster and E. T. Merrick. — The plaintiff respectfully prays this Honorable Court for a rehearing in this case, and submits the following reasons:
The question decided by this Honorable Court, in this case, involves so large an amount of money "in the various suits which it will affect, and it excites so much interest, both among the profession and commercial men and others, that we have thought it our duty to present to the Court some reasons why a rehearing should be granted.
It is assumed by the Court, as established, and the fact cannot be disputed, that during the time that prescription is supposed to have been running, that there were two years and two months of time, during which no suit could have been instituted against the defendant.
The question, therefore is, Did this impossibility to sue suspend prescription ? If it did, has not plaintiff the right to deduct this time from the first five years?
Troplong concedes that, according to the doctrine of Merlin, the creditor would have such a right, for that seems to have been the mode of computation where prescription was suspended.
Troplong says, Prescription No. 728: “Nousproposeronsméme uneautre limitation dont neparle pas Merlin,’’and then he states the doctrine, that if war and pestilence occur in the intermediate time, and not near the termination of prescription, it ought not to be regarded.
But the question arises, How have our Courts regarded this question? Have they followed Troplong or Merlin? We think it can be established that they have followed Merlin, and have held that where there was occasion to apply the doctrine of Contra non valeniem aaei'e non currit prcescriptio, they have held prescription to be suspended and have made the deduction accordingly.
Where a principle of law is embodied in one part of a system of laws which is equally applicable to other portions of the same laws, although not reiterated, it will be so applied by the Courts.
The legislative will is well ascertained from one example as many. The principle that cases are to be excepted, and the rules of prescription suspended in certain cases, is established by the Civil Code in articles 732 and 784, (which were cited in the original brief,) and this principle is affirmed by many decisions. Why should there be any distinction between the suspension of prescription in the case of express suspension, as shown by articles 3488 and 3491, as to minors and married women, and the case of suspension ex necessitate rei, or because it is within the spirit and reason of the whole body of the laws? If it be law, it is no less law in the one case than the other, and the Court should not hesitate to apply the principle in the one case more than the other; and we believe our Courts have not in fact made any distinction.
The first case in which the principle was applied was Querry’s Executor V. Faussier's Executor, 4 M. R. 609.
The Legislature had prohibited the bringing of suits for one hundred and twenty days, and the Court expressly says, (in estimatng prescription,) they arc not to be counted. The language is, These one hundred and twenty days ought not to be reckoned as a part of the time allowed the executor. They would suspend the prescription, Contra non valeniem agere non curi'it prosscriptio.
*134 The next case is Morgan v. Robinson, 12 M. 76, and the Court allow the plaintiff credit for the time defendant was absent from the State. They say the maxim Contra non valenlem agere, is “an axiom or first principle of natural law and justice, and therefore applicable to every system of jurisprudence wherein the contrary is not expressly established by legislation.” The same principle is recognized in the case of Guilliet v. Erwin, 7 L. R. 581, 582. The prescription was that of one year. Service of citation, 15th March, 1831, was not made until after two years from the time of origin of the action, February and March, 1829. The defendant remained, say, three months after the latter period, February and March, 1829, in Louisiana. He came back December 5th, 1829, and left again 24th April, 1830, the year expiring while he was present. He came back again 10th January, 1831, and suit was not until 15th March, 1831. Now, if the theory of Troplong had been true, the suit ought to have been brought in February and March, 1830, because at the expiration of the year, and for two or three months previous, the defendant was a resident in Louisiana, and could have been sued. But the Court did not so hold; on the contrary, it was determined that plaintiff w'as entitled, under the maxim, to a full year, utile iempus, and his suit was maintained, although it was not brought until after defendant’s return for more than two months, and after the expiration of the second year.
The same mode of calculation was adopted in the case of Dyraud v. Babin’s Heirs, 7 N. S. 471. The plaintiff, as the law then stood, could not sue Judge Winchester in his own court. This disability, which had existed from the time of Judge Winchester’s appointment, was removed, February 5th, 1824, by an act of the Legislature. See Act 1824, p. 10. Now the suit was not filed until the 6th December, 1824, and the land seized December 20th, 1824, more than ten months after the disability was removed. If the doctrine of Troplong is law, the suit should have been commenced immediately after the removal of the disability. But the Court does not intimate any such opinion; on the contrary, it can be fairly inferred from their language that they supposed the plaintiff had the residue of his five years in which to bring his suit. See p. 481. In Landry v. L’Eglise, 3 L. R. 219, the Court required the party pleading prescription to show the removal of the obstacle to the suit to have taken place more than five years previous to the commencement of the suit, but as this obstacle grew out of a stipulation in a contract, it is not exactly in point, although it supports our position so far as to show that the disability to sue sirspends the prescription.
In the two cases of Flint v. Cuny, 6 L. R. 67, and 7 L. R. 381, it was assumed by counsel, and not disputed by the Court, that appellant had one year in which to appeal after the removal of the impediment.
In Boyle v. Mann, the Court said, the removal of defendant to Texas and Mexico, prescription having run then for three years before such removal, ‘ ‘ suspended prescription, ” although the suit was commenced by attachment, say ten years after the maturity of the note. The Court here use a statutory word, a word defined by the Code, and it is to be presumed they used it in the sense understood by the fow-giver, and as producing the same consequences as in the other cases of suspension of prescription. Smith v. Taylor, 10 Rob. 133, merely shows the force of the maxim, Contra non valeniem agere non eurritprceseripiio. Such is also the case of Martin v. Jennings, 10 An. 553. See also Murphy v. Guiterez, 17 An. R. 269.
So far, the investigation of the decision of our courts show that the inability to act is a suspension of prescription with all the consequences of such suspension.
It now becomes us to examine (he cases which support the opposite theory as it is supposed. They are four in number. If we attend to what is decided in those cases we find, that as this Court has justly remarked, they merely decide that prescription runs in favor of absent debtors. In order to show the force of the articles of the Civil Code, the Court, it is true, say, arguendo, that it runs against minors and interdicted *135 persons. In Suydam, v. Kinney, the strongest case cited, the residence of defendant was “well-known to plaintiff, and no impracticability of enforcing the collection of his debt by legal process at any time since its maturity was proved. ” It was in reference to this state of facts that it was said that the prescription of promissory notes is peculiarly favored by our law, &c., (9 An. 316.) How different are the facts of the present case? .The plaintiff, a resident of a foreign country, was, it would seem, shut out from all access to the parish of Pointe Coupée, by a blockade, and by a “line of bayonets” for four years, in two and half of which no courts were held in said parish.
Here, then, the impediment is not that occasioned by the removal to a neighboring State by an individual, but by the nation, which creates the impediment, and it applies to a whole community. It is an act emanating from the sovereign power and binding upon all citizens and aliens. It is not a question of a day or a week, but of months and of years, if the war should so long exist, and during the existence of the war it was not possible, legally speaking, for the plaintiff to have entered the parish of Pointe Coupée to commence his suit in the Confederate courts, if any such were held, and such suit were lawful.
More than this, the plaintiff, an alien resident abroad, could not take out letters of administration on the estate of the defendant, and no administrator was appointed, against whom suit could be brought, until the 10th day of April, 1866, only six days before the suit was in fact filed; and the administrator even subscribed liis oatliafterwards. (Rec. pp. 4, 30 and 31.) Here, then, is a case in which no laches can be imputed to the plaintiff, and one in which, if equity be regarded, or the comity of nations, prescription ought not to be held to have barred the claim. But let us return to the four cases last above-referred to in 15 L. R. and 3d, 4th and 9th An., in the last of which the inference is deduced,that because bills of exchange and promissory notes are subject to prescription, as against minors and interdicted persons, that therefore, the law favors the prescription of promissory notes. We deny the deduction arrived at arguendo, in’9bh Annual. Promissory notes are not objects against which the Legislature has evinced particular hostility, and there is no reason to think that “the prescription of promissory notes is peculiarly favored by our law. ” This will appear by a moment’s reflection. Promissory notes and bills of exchange are the means by which the operations of commerce are carried on, and in times of peace they circulate with great facility. Now, as it regards this species of paper, when the Legislature came to adopt the short prescription of five years, it must have occurred to them that if this sort of paper could be held for twenty or nearly twenty-one years, during which the prescription would be suspended, it would occasion great embarrassment; the piece of paper might be purposely retained by the tutor, and it might be forgotten by the debtor, or the holder might be unknown to him, since such paper is, like bank-notes, transferable by delivery after endorsement. In the case of interdicted persons, the prescription might be suspended for even alnnger period than twenty-one years should the interdicted person so long live. It was advisable, therefore, to place minors and interdicted persons on the same footing as others; but it was so done because minors and interdicted persons are represented by tutors and curators who can at all times exercise the actions of the minors or insane persons, and so far protecting them against the negligence of the tutor and curator as to give them an action of indemnity against the latter should the debt be lost by prescription. Now, as the law compels the acceptance of the tutorship in certain cases, (C. C. 286,) and as the Judge must appoint a curator to a person whom he interdicts, and see that the minor is provided with a tutor, the argument drawn from the inexperience and tender age of a minor, and the incapacity of an interdicted person, has no force. It is an argument drawn from only a partial view of the facts and will not bear out the assertion in the case cited, that the law favors the prescription of promissory notes. Commercial paper, on the contrary, is favored by our *136 law, and the courts, have so held in many decisions. Enlightened legislation has always looked upon it as the most convenient means of carrying on the operations of trade, and the courts, since the time of Lord Mansfield, have considered it as a real security in the hands of the holder and cautiously abstained from all discriminations against, and wherever practicable have construed the laws favorably towards it. Grave reasons induced the Legislature to indemnify the minor and interdicted person by an action against their tutors and curators who should let the action be prescribed; but this very solicitude to prevent the embarrassment ol' commerce by the detention of bills of exchange in unknown hands during minority and interdiction, is the very best evidence that bills of exchange and promissory notes are favorably regarded by the Legislulu re, and the rule was established to render them the more valuable. They weru not to be imprescriptible, but the prescription was to be five years, and, as it respected that term, all the other exceptions were understood as in other cases, and in a proper case the tutor could no doubt avail himself of the maxim, Contra non valentem, dsc., like any one elso. During the time prescription is claimed to have run, the plaintiff, it may, we think, be inferred, as resident of a friendly nation, was prevented by the acts of our government from suing. Our government would have forcibly prevented plaintiff during the greater part of the time from entering Pointe Coupée, and would have looked upon any attempt to sue in the Confederate courts as an illegal and unfriendly act, and as the prohibition was made by the war-making power of the nation, it must have the effect of suspending prescription. The. United States claimed sovereignty and jurisdiction over the territory of Pointe Coupée as well as the rest of the Southern States, and was seeking to recover it, and therefore the ease stands as it would have done between the defendant and a citizen of New York, and the right to sue was suspended. 1 Kent, 68.
The rule of the common law, as we understand it, is this, that where the government by its own acts, as by war or by statutes, prevents suits, the statute ceases to run during the disability.
In the same manner prescription does not run during the time that a suit cannot be instituted in actions governed by short prescriptions. If it does not run, then time remaining is to be counted as shown by the authorities first herein cited, and especially is it the case where the. inability to sue is occasioned by no act of the government itself.
In the case of Reynolds v. Batson, 11 An. R. 729, this Court seems to have been of the opinion that where there is an occasion to apply the maxim in cases liberandi causa, it has the effect of suspending prescription.
The distinction between the utile tempus and the continuum of the civil law was adverted to and cases recognized as proper for the computation of utile tempus. This distinction, which is treated of at large by other authors, is noticed in these words by Mackeldey,Partie Générale. Sec. 211, No. 3. ed. 1846: “Dans les actions qui ne se prescrivent que par 30 on 40 ans, le laps de la prescription est toujours un délai continu (tempus continuum,) et dans quelques actions temporaires un délai utile ($195:) la prescription n’est parfaite que lorsque le dernier jour (dies novissimus) est entierement ecoulé. ”
So indeed of the maxim ‘ ‘ Contra non valentem agere non currit prcescripiio, The verb' “ curro,” currere, means to run. The prescription runs ; the prescription does not run. If it runs it is counted; if it does not run it cannot be counted. And this is the sense of all the decisions of our Courts where the question has been considered. And it is also the fact in regard to the French decisions, notwithstanding Mr. Troplong proposes another limitation of the rule. The case he cites, No. 726, was decided by the Court of Cassation, 21st July, 1829, and that Court deducted thirty years from the time which had run. 'We quote Troplong himself: “Que cet état de choses avait duré tant que s’étaitprolong'ée la confusion; et qu’en déduisant ce temps des 30 ans nécessaires pour preserire, un délai suffisant n’etait pas acquis au jour de l’introduction de l’instance.”
Where did the Court of Cassation get the right to deduct this time on *137 account of the confusion of the rights of debtor and creditor, which had taken place? There was no such express exception in the law. It was doubtless from an application of the maxim which Troplong, of his own authority, proposes to limit, without any judicial sanction for such limitation.
So in regard to the act of Congress of the United States. (13 Stat. at Large, 128.) This statute merely embodies a principle of law previously known, and supposed necessary to be enforced by legislative sanctions, on account of some possible hostile position of the Southern laws on the subject of limitation of actions. It suspends limitation during the time of disability; and such time of disability, is, by the express terms of the statute, to be deducted from the limitation.
Adverting again to the cases of Tyson v. McGill, 15 L. R. 145, and Hatch v. Gilmore, as well as the case in 9th A. 316, it may be remarked that they only decide, as already said, that where a defendant resides in a neighboring State, and his residence is known, that the maxim of Contra nonvalemtcm agere non currit prcescriptio does not apply.. The point is, also, decided in the same way, in Canal Bank v. Beard, 16 A. 346; 14 A. 418; 15 A. 399.
The point decided, therefore, is in perfect harmony with the other decisions of this Court. It is only what was said arguendo, which is in conflict with tho decisions, and has been overruled. What was said in Hatch v. Gilmore, adverse to the maxim, was overruled in the subsequent case of Boyle v. Mann, 4 A. 170, and what was said in Suydam v. Kinney, 9 A. 316, was overruled in Martin v. Jennings, 10 A. 553. Here, then,' we find a uniform current of decisions applied as well to promissory notes as to other obligations, and depending upon the same principles.
Surely, an argument, casually used by one Judge, and repeated by another, ought not to be permitted to overturn well-settled decisions of the Court; especially where that argument is only partial in its view, and does not grasp the whole subject, and arrive at the true reason of the rule.
Promissory notes were made prescriptible against minors and interdicted persons, because to tie them up for twenty-five or twenty-six years in favor of minors, or forty, fifty or sixty years in favor of interdicted persons, would destroy the efficiency of the same. For the advantage of trade, and for the benefit of the bill of exchange, or promissory note itself, it was made to run against tutors and curators of minors, and it is because the prescription of five years is a short prescription, that the-maxim is proper to be invoked in a case like the present.
We present to the Court, in conclusion, these facts, which we contend have suspended prescription; and according to the uniform current of onr decisions require the deduction of the time, in which no suit could bo brought, from the five years, viz:
The conceded fact that during two years and six months the courts were barred to the plaintiff and all others, and no suit could be brought; that plaintiff himself could not apply for, nor take out, letters of administration on the estate of the deceased; and that the suit was brought as soon as the administrator was qualified. And the fact to be inferred from the cause of the war, that plaintiff was barred by the blockade and military operations, of which this Court takes judicial notice, from going to the parish of Pointe Coupee during the war, to institute the action.
We, therefore, respectfully pray that a rehearing be granted the plaintiff, and for leave to adduce further authorities upon this important question, and general relief.
Rehearing refused.